UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 03-12355-NMG

THOMAS BUFFONGE,
Plaintiff

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA
And
GETRONICS WANG CO., LLC.
Defendants

## OPPOSITION OF PLAINTIFF THOMAS BUFFONGE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff, Thomas Buffonge, through counsel, hereby opposes the Motion for Summary Judgment filed in this action by Defendants Prudential Insurance Company of America and Getronics Wang Co., LLC, and additionally files this Cross Motion for Summary Judgment.

## I.   INTRODUCTION

### SUMMARY OF ARGUMENT

As is set forth in Defendants' Brief in Support of their Motion for Summary Judgment, this is an action in which a former employee of the Wang Corporation (which is now Defendant Getronics Wang Co., LLC) Mr. Thomas Buffonge, has claimed that he was wrongfully denied long term disability payments by the insurance company administering Wang's long term disability plan, Prudential Insurance Company of America. Mr. Buffonge claims that he suffered an on the job injury to his neck and back while working in 1993, that he never fully recovered from that injury,

1

and that at least as of 1996 and 1997 he was totally disabled from any job due to those injuries. Mr. Buffonge has remained totally disabled and to this date is not able to work. Mr. Buffonge receives social security disability benefits.

It is Mr. Buffonge's claim that when Prudential denied his final appeal of his claim for long-term disability benefits in November of 1997, it violated his rights under the Employee Retirement Income Security Act ("ERISA"). Specifically, Mr. Buffonge asserts that in denying his claim for long-term disability benefits in November of 1997 (his final appeal under the relevant long term disability insurance plan), Prudential abused its discretion to make benefit determinations under the Plan, and did not base its decision upon substantial evidence.

As is set forth in greater detail in following sections of this Brief, Mr. Buffonge asserts that Prudential's decision was an abuse of discretion and was not based on substantial evidence for the following reasons:

1. The medical consultant who was hired by Prudential to review Mr. Buffonge's medical records and render an opinion as to his entitlement to disability benefits, Dr. Rutchik, gave absolutely no weight to credible evidence in the files he reviewed of Mr. Buffonge's entitlement to disability benefits and proceeded to simply ignore that evidence. Dr. Rutchik either ignored or did not give adequate weight in making his determination, to the opinions and reports of Dr. Duhme and Dr. Jacques that Mr. Buffonge was indeed totally disabled. Both Dr. Rutchik and Prudential (in making its ultimate determination of whether or not Mr. Buffonge was entitled to disability payments) either gave inadequate weight or ignored various aspects of Mr. Buffonge's medical history which they had before them, they gave little or no weight to, or ignored, evidence in the record that Mr. Buffonge was not able to perform his job with Wang, and they intentionally misinterpreted one of the reports of Dr. Jacques holding that Mr. Buffonge was totally disabled.
2. Based upon the inadequacies in his report to Prudential (as set forth above) as well as certain comments he made to Prudential in the course of his review, as well as comments he made in his report, Dr. Rutchik did not impartially review Mr. Buffonge's records or render an impartial opinion to Prudential, all of which Prudential was aware of.
3. Prudential gave improper weight to the inadequate report of Dr. Rutchik, in comparison to the lack of consideration given to the various credible evidence presented by Mr. Buffonge's physicians and accordingly, when the evidence is

2

viewed as a whole, there is not substantial evidence to support Prudential's decision denying disability benefits. Prudential's decision denying benefits was an abuse of discretion.

## II. RELEVANT STANDARD OF LAW AND THE UNDISPUTED FACTS IN THIS ACTION

Plaintiff does not disagree with Defendants either as to the relevant standard of review for the Court in this case, or the facts at issue in this case.

With regard to the relevant standard of law, Plaintiff agrees that under the language of the Plan at issue, Prudential had discretionary authority to determine Mr. Buffonge's eligibility for benefits. Accordingly, the appropriate standard of review for this Court, is whether the decision made by Prudential denying benefits to Mr. Buffonge was arbitrary and capricious, or without a rational basis. The relevant question for the Court, in order to determine whether the decision was arbitrary, capricious or without rational basis, is whether there was substantial evidence in the record before Prudential supporting its decision. The appropriate standard is set forth in the First Circuit decision of Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27 (1st Cir. 2001). As the First Circuit stated in Vlass at 29-30:

> "When a Plan Administrator has discretion to determine an applicant's eligibility for benefits, such as here, the Administrator's decision must be upheld unless "arbitrary, capricious, or an abuse of discretion." ...this standard means that the Administrator's decision will be upheld if it is reasoned and "supported by substantial evidence in the record." ...Evidence is "substantial" if it is reasonably sufficient to support a conclusion...moreover, the existence of contradictory evidence does not, in itself, make the Administrator's decision arbitrary."

Just as importantly, and of particular relevance to the instant controversy, it is "the responsibility of the Administrator to weigh conflicting evidence." Vlass, supra, at 32.

3

The standard for review of an ERISA Administrator's decision when a Plan is granted discretion to make benefits decisions, was set forth in even greater detail by the Tenth Circuit in the case of Caldwell v. Life Insurance Company of North America, 287 F.3d 1276 (10th Cir. 2002). The Tenth Circuit discussed the relevant standard at page 1282 of its decision as follows:

> "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary. ...Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker...substantiality of the evidence is based upon the record as a whole. In determining whether the evidence in support of the Administrator's decision is substantial, we must "take into account whatever in the record fairly detracts from its weight." ...We give less deference if a Plan Administrator fails to gather or examine relevant evidence...""

In order words, in determining as to whether or not Prudential's decision was arbitrary and capricious or an abuse of its discretion, this Court must determine whether that decision was based upon substantial evidence. In deciding whether or not Prudential's decision was based upon substantial evidence, this Court must determine whether there is adequate evidence in the record to support Prudential's conclusion, whether there is enough evidence in the record detracting from the proprietary of Prudential's decision to cause that decision to be based on other than substantial evidence, and whether relevant evidence was ignored.

**FACTUAL BACKGROUND**

As was stated earlier, Plaintiff does not disagree with any of the facts set forth by Defendants. For the purposes of this Motion for Summary Judgment, all of the relevant factual materials are set forth in the agreed upon record for judicial review ("Record") which was filed by the parties earlier in this action.[1]

---

[1] Citations to the Record are referred to as "Exhibit __." The Record consists of numbered Exhibits 1 through 134.

4

Although Plaintiff does not assert that there are facts in dispute in this action, Plaintiff does feel it is necessary to draw the Court's attention to certain of the undisputed facts set forth in the Record which have largely been ignored by Defendants, and which were completely ignored by Prudential in making its benefits determination. These relevant facts, and their location in the Record, are as follows.

1. Exhibit 89-Harvard University Health Service, note of Dr. David Duhme of 11/9/95:

   "History: he has increasing pain in the back of his neck, radiating up to the occiput, spreading over both the front and the back of the left shoulder and adjacent chest, and down the left arm. There is some tingling in his left fingers. He has had a good day or two since his last visit here only. Usually he goes into work, tries to work, and may have to stop and lie down. He does not think he can carry on. He needs some time off from work…"

2. Exhibit 90-Follow up clinic notes of Dr. David Duhme of 11/30/95:

   "Neck pains were better out of work but actually seem to have come back in the first 2-3 days. Pain also still radiates down his l leg. Pains are worse if he sits too long. "Something has to be done" so he is researching acupuncture, has appt. Mansfield in January."

3. Exhibit 94-Harvard University Health Service, note of Dr. David Duhme of 02/22/1996:

   "History: neck pain radiating to the chest and head remains a problem. He says that today was pretty good, but the last 2 days were marked with severe pain. This limits his quality of life as he describes things around the house such as changing a tire which he cannot do anymore. It limits his time at work with him having to leave early or miss days when the pain is severe and this is producing tension between him and others on the job. …"

4. Exhibit 96-SOAP Note of Doctor David Duhme of 4/16/96:

   "His recently disabling pains have been in the left anterior chest coming on suddenly with bending or lifting and then lasting for several days. This pain may also be reproduced at a trigger point in his left lower anterior neck. Neck pain had been quiescent since December but returned 3 days ago radiating to the left side of his head worse on turning his head. He is wearing neck brace as a result. Low back pain in mid lumbar back is unrelated to movement. There is also a different pain that will radiate down the l leg to the back of the knee."

5

5. Exhibit 97-University Health Services Physical Examination Note of April 16, 1996:

"Back: flexion limited, not within 8" of toes with paraspinous spasm during and after testing."

6. Exhibit 98-Prudential Insurance Company Attending Physician's Statement of David Duhme dated May 16, 1996:

"Chronic neck, shoulder and chest pain aggravated by work...chronic intervertebral disc disease...long term disability...pain returns whenever he returns to work for more than 2 weeks."

7. Exhibit 101-SOAP note of Dr. David Duhme dated June 19, 1996:

"...he again has some increase in chronic neck pain, esp. on waking in the morning in the back of neck and head and spreading into the shoulders. He will still get back pain and "muscle spasms" with pain radiating to the l buttock worse with any prolonged standing...although depression may be causing an overlay that exacerbates his disability from back and neck pain, he still is disabled from the combination of problems but specifically from disc disease in the back and neck. A new letter is written extending his disability another three months."

8. Exhibit 102-Note of Dr. David Duhme dated June 19, 1996 to Thomas Buffonge:

"You are still having pains from both your cervical and lumbar disc disease that is aggravated by work. At this point you are still disabled and should plan on another three month time out of work before reassessing ability to return."

9. Exhibit 104-Harvard University Health Service note of Dr. Frederick Mansfield dated July 23, 1996:

"I saw him in January. He says that his neck is about the same as then but that his low back pain and left lateral thigh and calf pain is worse. It is dull in quality. It is limiting his walking from 1-1 1/2 miles. After he walks that distance he has to lie down for a while. No bowel and bladder symptoms. He has been out of work because of the pain since February of 1996.

10. Exhibit 105-Sheilds Health Care MRI Network report of MRI exam dated July 29, 1996:

"Comparison is made to 2-15-94 again seeing his moderate left side L5-S1 foraminal stenosis secondary to degenerative changes. There are mild to moderate degenerative changes of the L5-S1 facet joint bilaterally. There is a small central disc protrusion at L5-S1 touching both existing S1 nerve roots. There is a mild concentric disc bulge at L4-5 and mild central disc bulge at L3-4. When compared to the prior study of 2-15-94, there has been no change.

11. Exhibit 107-SOAP note of Dr. David Duhme dated August 2, 1996:

"Chest and neck pain are better. Back pain persists with him planning to proceed with Cortisone injections offered by Dr. Mansfield."

12. Exhibit 110-Letter from Dr. David Duhme dated July 20, 1994:

"To Whom It May Concern. I am the primary care internist for Thomas Buffonge and was the first physician to evaluate his neck pain last summer and refer him for orthopedic evaluation. I have been seeing him frequently in the interval and kept in touch with the progress of his neck pain and back pain. …He is clearly highly motivated to work and frustrated at his repeated failure to return to work without aggravating the pain."

13. Exhibit 116-Letter from Dr. David Duhme dated September 9, 1995:

"To Whom it May Concern. Thomas Buffonge has worsening in his chronic pain from a herniated intervertabral disc. He has been diligently trying to work but the pain just gets worst. It will now be time for him to take a medical leave of absence for 3-4 weeks. He is also getting a change in medication and a new surgical consultation.

14. Exhibit 117-Letter from Dr. David Duhme dated December 1, 1995:

"To Whom it May Concern. Thomas Buffonge is again somewhat improved from his chronic intervertabral disc disease affecting both neck and lower back. We think he can return to work on December 11 but should avoid heavy lifting or prolonged sitting.

15. Exhibit 118-Letter from Dr. David Duhme to Thomas Buffonge dated December 18, 1995:

"I am sorry to hear that you have increasing pain radiating from neck to waist and down 1 leg, and also symmetrically on the back of the head. It sounds like a return of your intervertabral disc disease pinching major nerves. I approve and extended further period of 4 weeks of time out of work."

16. Exhibit 125-Report of Dr. Emilio Jacques dated March 18, 1997:

"I examined Mr. Thomas Buffonge on 4-19-97 [sic] due to a work related accident and injuries sustained on 6-15-93…in my opinion due to the severity of the patient's injuries he is permanently disabled and unable to resume his occupation at the present time."

17. Exhibit 127-Addendum to Office Visit Report of Dr. Emilio Jacques dated April 9, 1997:

7

"In my opinion Mr. Thomas Buffonge is totally and permanently disabled and unable to resume his occupation as a result of the industrial accident injuries that he sustained on the date of 6-15-93."

18. Exhibit 128-Report of Dr. Emilio Jacques dated April 9, 1997:

"Due to the patient's failure to improve with conservative treatment over a 3-4 year period of time, I believe he is a good candidate for long term disability benefits."

19. Exhibit 130-Report of Dr. Emilio Jacques dated June 11, 1997:

"In my opinion, based upon a reasonable degree of medical certainty, Mr. Buffonge's symptoms and complaints, objective and subjective findings are causally related to the industrial accident he was involved in on the date of 6-15-93 and in my opinion he is disabled and unable to resume his occupation. In my opinion, due to the long standing chronicity and severity of his symptoms, he is a good candidate for disability at this time. I do not foresee any marked changes in his chronic spinal pain syndrome and I do not feel that he would benefit from surgical intervention."

20. Exhibit 131-Report of Dr. Emilio Jacques dated July 9, 1997:

"In my opinion, based upon a reasonable degree of medical certainty, Mr. Buffonge's symptoms and complaints, objective and subjective findings are causally related to the industrial accident he was involved in on the date of 6-15-93 and in my opinion he is disabled and unable to resume his occupation."

21. Exhibit 132-Letter from Dr. David Duhme to Attorney Ben Corey dated July 16, 1997:

"I am writing to confirm my feeling that Thomas Buffonge has a permanent and complete long term disability. There was a time when he wanted to work and I wanted to help him find the appropriate job. I understand that I am quoted from that time as seeing [sic] he could do intermittent work for short periods of time. We confirmed at that time that no such job exists. He is unable to perform any job that I can think of. He is completely disabled by chronic neck pain due to cervical disc disease and low back pain due to lumbar disc disease. Either sustained activity or sustained sitting will aggravate these pains; he is at the mercy of his illness and unable to devote his attentions to any work."

22. Exhibit 133 (at page TB-411)-SOAP note of Prudential Financial dated 11-11-97:

"Dr. Rutchik concluded that there is objective evidence to support the patient's present complaints of chronic neck and back discomfort. However, it is clear that a consensus exists about the fact that CLMT can perform work tasks such as

sedentary duties and keyboard work. It is also clear that he cannot do lifting over 15-20 pounds or pushing, pulling, bending or twisting as well as lifting over his head. It is his opinion that with the above restrictions CLMT can perform the duties of his job."

23. Exhibit 133 (at page TB-412)-SOAP note of Prudential Financial dated 11-12-97:

"Based on a review of the file and the file review reported by Dr. Rutchik, it was the decision of the appeals committee to uphold the decision to disallow the claim. Medical does not substantiate that EE is totally disabled from performing his OCC which is sedentary and does not involve any lifting."

24. Exhibit 134 (at page TB-424)-Telephone call log of Prudential Financial entry for 11-4-1997 phone call from Dr. Rutchik:

"He is missing the second page of Dr. Lipson's 8-29-94 report. Advised I will fax him. He asked what we wanted in the report. I asked him to synthesize the medical. Point of relevant facts, discrepancies, etc. Based upon his review, what are CLMT's restrictions re: sit, stand, etc. Advised that Pru makes medical determination."

25. Exhibit 30 at page TB-177-Note of Dr. Emilio Jacques dated August 27, 1997:

"In my opinion, based upon a reasonable degree of medical certainty, Mr. Buffonge's symptoms and complaints, objective and subjective findings are causally related to the industrial accident he was involved in on the date of 6-15-93 and in my opinion he is disabled from any gainful employment at the present time. In my opinion he is disabled from repetitive bending, lifting, pushing, pulling and carrying over 15 to 20 lbs. and he is disabled from any repetitive squatting and crawling positions."

## III.  ARGUMENT

Plaintiff Thomas Buffonge asserts that the decision of Prudential Insurance denying him long-term disability benefits must be overturned as being arbitrary, capricious and an abuse of discretion, because it is not based upon substantial evidence. The decision is not based upon substantial evidence, due to the fact that the medical review relied upon by Prudential in denying benefits (which was performed by Dr. Rutchik) ignored or gave no weight to certain aspects of the extensive medical history of Mr. Buffonge which indicated that he was indeed totally

9

disabled, and ignored or gave no weight to two reports of treating physicians which also indicated that Mr. Buffonge was totally disabled. The medical opinions by Mr. Buffonge's treating physicians were not adequately discussed by Dr Rutchik and were ignored by him. The report of Dr. Jacques was intentionally misread and misinterpreted by Dr. Rutchik.

On the first page of Dr. Rutchik's report, the first document he refers to in the record is the August 27, 1997 office note of Dr. Emilio Jacques. This is the report of Dr. Jacques found at Exhibit 30, in which he states the following:

> "In my opinion, based upon a reasonable degree of medical certainty, Mr. Buffonge's symptoms and complaints, objective and subjective findings are causally related to the industrial accident he was involved in on the date of 6-15-93 and in my opinion he is disabled from any gainful employment at the present time. In my opinion he is disabled from repetitive bending, lifting, pushing, pulling and carrying over 15 to 20 lbs. and he is disabled from any repetitive squatting and crawling positions."

In Dr. Rutchik's analysis of the August 27, 1997 report of Dr. Jacques (found at Exhibits 34 and 35) although Dr. Rutchik notes Dr. Jacques opinion that Mr. Buffonge was "disabled from any gainful employment at the present time," Dr. Rutchik ignores this conclusion. In commenting upon the August 27, 1997 report, all that Dr. Rutchik states is the following:

> "Dr. Jacques was specific about the tasks that Mr. Buffonge could not do and thus inferred that there were jobs that he could do."

This comment by Dr. Rutchik misrepresents Dr. Jacques report, ignores the conclusion in the report and is simply false. It is simply not possible for Dr. Rutchik to state in good faith that Dr. Jacques' report "inferred that there were jobs that [Mr. Buffonge] could do" in light of the fact that the report states that Mr. Buffonge was "disabled from any gainful employment at the present time." Dr. Jacques does not state that Mr. Buffonge was disabled only from positions that required the bending, lifting, pushing, pulling or carrying that he referred to, but rather, stated

10

that he was "disabled from any gainful employment at the present time."

It is simply not true that Dr. Jacques "inferred that there were jobs" that Mr. Buffonge could do. Dr. Rutchik has intentionally misread Dr. Jacques report, and he has misrepresented it. Dr. Jacques was one of Mr. Buffonge's treating physicians.

According to the medical records in the administrative record, Dr. Jacques examined Mr. Buffonge a number of times. In the reports and records he wrote related to Mr. Buffonge, Dr. Jacques stated repeatedly that Mr. Buffonge was indeed totally disabled. However, although Dr. Rutchik mentions a few of these conclusions by Dr. Jacques, at no point does he actually take issue with them, at no point does he explain why in his opinion there are incorrect, and at no point does he challenge them. All he does is misinterpret them.

At the second page of his review (TB-188) Dr. Rutchik discusses the office note from Dr. Jacques dated July 9, 1997. That is the note found at Exhibit 131 in which Dr. Jacques states that Mr. Buffonge is "disabled and unable to resume his occupation." Rather than taking issue with this conclusion, or explaining why he feels it is incorrect, all Dr. Rutchik does is to state the following:

> "This notation does not provide any opinion about whether this patient may perform other job duties."

Once again, Dr. Rutchik is misreading the report and misrepresenting what it says. Specifically, Dr. Jacques stated that Mr. Buffonge was "disabled." Having concluded that Mr. Buffonge was disabled, there is no reason he would offer any opinion as to "whether this patient may perform other job duties." Inferentially he did offer such an opinion. By stating that Mr. Buffonge was disabled, he was stating that Mr. Buffonge could not perform other job duties.

11

Plaintiff is not claiming that Dr. Rutchik should not be able to disagree with the opinions of Mr. Buffonge's treating physicians or that Dr. Rutchik should not be allowed to come to a conclusion different from them. However, in determining whether Dr. Rutchik performed an adequate review of the medical records, and whether Dr. Rutchik's opinion and therefore Prudential's decision denying disability benefits were based on substantial evidence, it must be determined whether Dr. Rutchik considered, weighed and evaluated the conflicting evidence in the medical record. Based upon the comments and analysis set forth in his report, he did not. As Prudential claims to have based its decision upon the review of the medical record as well as a review of Dr. Rutchik's report, Prudential was clearly aware of the fact that Dr. Jacques and Dr. Duhme did not make the statements attributed to them by Dr. Rutchik and that it is contrary to logic and a plain reading of their reports and records to interpret their reports in the way in which Dr. Rutchik interpreted them.

There are three other occasions set forth in the medical records (found at Exhibits 125, 127 and 130) (all of which are referred to in Dr. Rutchik's review), in which Dr. Jacques stated his opinion that Mr. Buffonge was totally disabled. Dr. Rutchik does not even bother to comment upon these conclusions despite the fact that they are central to an analysis of whether or not Mr. Buffonge was indeed totally disabled.

The other treating physician who found Mr. Buffonge to be totally disabled was Dr. David Duhme. Dr. Duhme had been treating Mr. Buffonge from the time of his initial injury in 1993 up to and including the time of his report dated July 16, 1997 (which Dr. Rutchik reviewed). The July 16, 1997 report is the report found at Exhibit 132 in which Dr. Duhme states that Mr. Buffonge has a "permanent and complete long term disability…he is unable to perform any job

12

that I can think of. He is completely disabled by chronic neck pain due to cervical disc disease and low back pain due to lumbar disc disease. Either sustained activity or sustained sitting will aggravate these pains; he is at the mercy of his illness and unable to devote his attentions to any work."

Once again, rather than taking issue with the conclusion of total disability, explaining why the conclusion of total disability is wrong, or even stating that the opinion as to total disability is wrong, all Dr. Rutchik does is attempt to undermine the report to whatever extent he can. Dr. Rutchik's comment about Dr. Duhme's report is limited to the following:

> "This letter provided no objective evidence that he has a condition where he could not do sustained sitting or sustained activity. It is unclear what this Doctor means by the fact that "we have confirmed that no such job exists." What job? Does this mean that there might be a job in a perfect setting? What is that setting?"

Dr. Rutchik does not discuss Dr. Duhme's conclusion that Mr. Buffonge has a permanent and complete long-term disability. Dr. Rutchik does not discuss Dr. Duhme's conclusion that Mr. Buffonge "is unable to perform any job that I can think of." Dr. Rutchik does not discuss the fact that Dr. Duhme states that Mr. Buffonge is "completely disabled."

Very importantly, Dr. Rutchik does not discuss or comment upon Dr. Duhme's conclusion that "either sustained activity or sustained sitting" would aggravate Mr. Buffonge's condition. <u>This final omission is quite important, as Dr. Duhme's conclusion that either sustained activity or sustained sitting would aggravate Mr. Buffonge's pain runs directly contrary to Dr. Rutchik's conclusion that Mr. Buffonge could perform sedentary work.</u> Once again, Plaintiff is not contesting Dr. Rutchik's ability to come to a different conclusion than Dr. Duhme, provided that conclusion takes into account contrary evidence and is based on something other than a desire to simply disqualify Mr. Buffonge from obtaining disability benefits.

13

The medical record contains reports from two treating physicians, Dr. Duhme and Dr. Jacques, explaining why, in their opinion, Mr. Buffonge is totally disabled. By ignoring those conclusions, by misinterpreting those conclusions, and by misrepresenting what those conclusions are, Dr. Rutchik has performed an inadequate review of the medical records, his opinion is inadequate, his opinion is not based upon substantial evidence, and his opinion cannot constitute substantial evidence upon which Prudential's denial of benefits can properly be based. As the flaws in Dr. Rutchik's report are evident on the face of the medical records and were clear to Prudential (as it based its decision supposedly upon a review of the medical records combined with Dr. Rutchik's report) Prudential's reliance upon this obviously flawed report prevents its benefit denial determination from being based on substantial evidence, and causes it to be arbitrary, capricious and an abuse of discretion.

Dr. Rutchik's inadequate review is not limited to the reports of Dr. Jacques and Dr. Duhme. As is evident from a reading from the prior section of this Brief setting forth certain aspects of Mr. Buffonge's medical history and medical records, Mr. Buffonge's extensive medical history is replete with examples of Mr. Buffonge suffering from extreme pain which prevented him from working. A review of these records reveals a consistent pattern of Mr. Buffonge's pain and medical difficulties growing increasingly worse, and his ability to work consistently deteriorating to the point where he could no longer perform his job and became totally disabled. However, although Dr. Rutchik mentions this extensive history in his report and clearly looked at these records, he does not say anything at all about them. He states nothing about why they do not indicate to him that Mr. Buffonge is totally disabled, he does not state anything about questioning whether the history provided by Mr. Buffonge was correct, and he does not analyze the history.

14

Once again, Dr. Rutchik was only concerned with arriving at a certain conclusion (the denial of benefits) and was not concerned about how he got there. His failure to discuss or analyze Mr. Buffonge's extensive history supporting his claim of total disability prevents Dr. Rutchik's report from being adequate or being based on substantial evidence. Similarly, Prudential's refusal to weigh the facts in the record which were contrary to its conclusion, as well as its reliance on Dr. Rutchik's inadequate report, prevents its conclusion from being based on substantial evidence.

In the conclusion of his report, after noting that there is indeed objective evidence to support Mr. Buffonge's complaints of neck and back discomfort, Dr. Rutchik states the following:

> "It is clear, however, that a consensus exists about the fact that Mr. Buffonge can perform work such as sedentary duties and keyboard work."

This statement is false, and it is simply an invention of Dr. Rutchik's. Dr. Rutchik does not explain what the supposed "consensus" is based upon, or which physicians, caregivers, or reports form the bases for his conclusion that such a "consensus" exists. Indeed, in light of the statements by Dr. Duhme and Dr. Jacques that <u>Mr. Buffonge cannot perform any job at all</u> and is totally disabled, it is hard to see how, in good faith, Dr. Rutchik could state that a "consensus" exists upon which it was felt that Mr. Buffonge could do sedentary work. Mr. Buffonge's treating physician Dr. Jacques did not hold that opinion. Mr. Buffonge's treating physician Dr. Duhme did not hold that opinion. Moreover, Dr. Rutchik does not point out which if any physicians or caregivers held that opinion.

By drawing this obviously false conclusion, Dr. Rutchik's report cannot serve as substantial evidence for Prudential's disability decision. Similarly, as Prudential's review of the medical record would reveal that no such "consensus" existed and Prudential therefore knew that Dr.

15

Rutchik's report contained false conclusions, Prudential's decision is similarly not based upon substantial evidence.

In the record at Exhibit 133, Prudential states that the appeals committee disallowed benefits based upon a review of the file and the file review of Dr. Rutchik. For the reasons set forth above, Plaintiff asserts that Dr Rutchik intentionally did not perform a proper review of the medical records, had no intention of performing an impartial review of Mr. Buffonge's claim, and intentionally either overlooked facts contrary to his conclusion or misinterpreted those contrary facts.

As initial grounds for this claim, Plaintiff refers to the Court to the argument in the prior section of this Brief, in which Plaintiff has pointed out the obviously incorrect conclusions of Dr. Rutchik, instances where Dr. Rutchik has clearly misstated the medical record, instances where Dr. Rutchik has overlooked crucial statements and facts, and one instance where he has essentially fabricated facts (regarding the supposed "consensus.") Secondly, a reading of Dr. Rutchik's report makes it clear that his intention was not to neutrally evaluate either the facts in the record or the opinions which were contrary to his conclusion, but rather to do whatever possible, even if it was stretching the facts or stretching logic, to undermine and attack facts contrary to his conclusion, in the record. A review of Dr. Rutchik's report and the language in it reveals that Dr. Rutchik had a set agenda, to deny Mr. Buffonge his benefits, even before he begin to read the medical records.

Finally, a conversation which Dr. Rutchik had with Prudential prior to submitting his final report is most instructive. Exhibit 134 (at page TB-424) contains excerpts from a telephone call log regarding Mr. Buffonge's claims. The entry for November 4, 1987 indicates a call to Prudential from Dr. Rutchik. Among other things, according to the employee of Prudential responsible for

Mr. Buffonge's claim, Dr. Rutchik "asked what we wanted in the report." Although the Prudential employee states that she told Dr. Rutchik that Prudential wanted a synthesis of the medical records pointing out relevant facts, discrepancies and restrictions, that statement does not make sense. Assuming that Dr. Rutchik was qualified to review and issue a report, it is beyond belief that Dr. Rutchik did not realize that he was being given the file to review the medical records and synthesize them for Prudential. Rather, in all likelihood what really occurred during the conversation was that Dr. Rutchik asked what conclusions Prudential wanted in the report and was told what those conclusions should be. It is beyond belief that Dr. Rutchik would ask "what Prudential wanted in the report" because he did not know what he was supposed to do with the medical record.

The combination of Dr. Rutchik's question to Prudential asking what it wanted in the report along with his obviously deficient analysis and his preset agenda, reveal that Dr. Rutchik was biased in writing his report and clearly did not consider evidence which was contrary to his desired conclusion. For these reasons, Dr. Rutchik's report as well as Prudential's decision to deny benefits, were not based upon substantial evidence.

Based upon all of the above, it is clear that neither Dr. Rutchik nor Prudential were willing to consider evidence contrary to their desired conclusion of denying benefits to Mr. Buffonge, and that neither Prudential nor Dr. Rutchik were willing to analyze, evaluate or discuss evidence which was contrary to their conclusions. Additionally, Dr. Rutchik drew obviously false inferences from the available evidence, and misrepresented aspects of the medical record, all of which was obvious to Prudential in reviewing Dr. Rutchik's report and the medical file. For all of these reasons, Prudential's decision to deny disability benefits to Mr. Buffonge was not based

upon substantial evidence. Therefore, Prudential's denial of benefits was arbitrary, capricious and an abuse of discretion.[2]

## IV. CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Defendants' Motion for Summary Judgment be denied, and that Summary Judgment be entered in Plaintiff's favor as to liability. Plaintiff requests that the Court allow the parties to engage in limited discovery (or alternatively, conduct a trial) to determine the nature and the amount of damages to which Mr. Buffonge is entitled, and that the Court enter appropriate Orders that Mr. Buffonge be retroactively granted the long term disability benefits and other relief to which he is entitled.

THOMAS BUFFONGE
By his Attorney,

_____
Mitchell J. Notis/BBO # 374360
LAW OFFICE OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel.: (617) 566-2700

DATED: December __, 2004

---

[2] It should be noted that in the claim denial sent to Mr. Buffonge in November of 1997, there is reference to the elimination period of the Prudential Plan and an inference that Mr. Buffonge did not meet the elimination period. However, in its denial letter Prudential does not clearly state that that was one of the grounds for denying Mr. Buffonge's claim for long-term disability benefits. Similarly, in Defendants' Brief although there is a passing reference to the elimination period, once again that is not specifically stated as a grounds for denying Mr. Buffonge's claim. Rather the emphasis in both the November 1997 denial letter as well as the Defendants' Brief is upon Dr. Rutchik's report and Mr. Buffonge's supposed ability to perform sedentary work. This distinction does not really matter. Initially, to the extent that Prudential's decision that Mr. Buffonge could perform sedentary work is found to be not based upon substantial evidence, any determination that he did not meet the elimination period must fail for the very same reason. Secondly, by the time that Mr. Buffonge's claim was given final denial in November of 1997, assuming that as Plaintiff claims he was not able to perform sedentary work and that Prudential's decision that he could perform sedentary work is not based upon substantial evidence, he would have clearly met the elimination period requirements set forth in the Plan. In other words, if Prudential's determination that Mr. Buffonge could do sedentary work (its decision that he could perform the duties of his position) is wrong and is not based upon substantial evidence, then Mr. Buffonge was indeed disabled for the required elimination period.

18

## CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that on December 3, 2004 I served a copy of the foregoing document upon all counsel of record to this action by first class mail, postage prepaid.

_____
Mitchell J. Notis